**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | Case No. **25-33836 MAB** |
| Accurate Communication Solutions, Inc., | Chapter 11 |
| Debtor. | |

# 2nd MODIFIED PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11

## ARTICLE 1: SUMMARY

A. Summary of Plan

This chapter 11 plan of reorganization (the "Plan") proposes to pay creditors of Accurate Communication Solutions, Inc. ("Debtor") with all of the projected disposable income of the Debtor for a thirty-six (36) month period. The Plan has five classes, three secured classes, one unsecured class, and one class for equity interests. As required by the Bankruptcy Code, this Plan provides for full payment of Administrative and Priority Claims.

Each creditor should thoroughly read this Plan for an explanation of the precise treatment of the applicable claims. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation. The liquidation analysis, as of February 24, 2026, attached as Exhibit A demonstrates that unsecured creditors will receive about 16.29% under a liquidation (chapter 7).

The Debtor's cashflow projections are attached as Exhibit B, and these projections confirm that the Debtor generates sufficient cash flow to fund the payments due under the Plan and provides payments to unsecured creditors in the total amount of $133,734.68 over the next thirty-six (36) month period (a 29.13% distribution to unsecured creditors).

B. History of the Debtor

The Debtor, Accurate Communication Solutions, Inc. ("ACS") is a Minnesota corporation that was formed on February 3, 2004. ACS is contract installer for DISH Network LLC ("DISH"). ACS receives new installations from DISH and service related calls for existing DISH customers. ACS had a judgment entered against it which caused it to seek bankruptcy protection. With this bankruptcy protection, ACS has been able to continue business operations and with the confirmation of this proposed plan, will all it to perform under the projections

attached hereto.

On the gross revenue part of the projections, the projected gross revenue of ACS is projected to decrease due to the trends in consumer preferences. ACS was informed by DISH that customer subscribers have been dropping consistently due to the option of "streaming" services, and DISH and ACS believes this trend will continue into the future. However, even with the decrease in future gross revenue, ACS is still profitable and able to pay its creditors per the terms of this proposed plan.

**ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS**

Class 1 consists of the secured claim of Ally Bank. Class 1 is not impaired and not entitled to vote.

Class 2 consists of the secured claim of TD Bank, N.A. Class 2 is not impaired and not entitled to vote.

Class 3 consists of the secured claim of AmeriCredit Financial Services, Inc. dba GM Financial. Class 3 is not impaired and not entitled to vote.

Class 4 consists of all allowed general unsecured claims against the Debtor. Class 4 is impaired and is entitled to vote.

Class 5 consists of all allowed equity interests of the Debtor. Class 5 is unimpaired and not entitled to vote.

**ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND COURT FEES**

3.1 Unclassified Claims. Pursuant to section 1123(a)(1), this Plan has not included Administrative Expenses or Priority Tax Claims within any Class.

(a) Pre-Petition Priority Government Claims. The claims of the Internal Revenue Service ("IRS") and Minnesota Department of Revenue ("MDOR") will be paid as follows:

(i) IRS Priority Claim: The amended IRS claim filed on February 23, 2026 shows a zero ($0.00) balance. If this claim is later amended to show a balance, it will be paid on the Effective Date, or promptly anytime thereafter if this claim is later amended to show a balance owing. The IRS may apply such payment in accordance with its own customary practice.

(ii) MDOR Priority Claim: $19,648.87, will be paid in full, at eight percent (8.0%) interest, in thirty-six (36) installments of $615.72 per month with the first payment due on the Effective Date. The MDOR may apply such payment in accordance with its own customary practice.

If the Debtor defaults on any payment due to the IRS or MDOR, and such default continues

for thirty (30) days or more, the outstanding amount due to such entity shall become due and payable immediately, and the same may be collected through the administrative collection provisions of the Internal Revenue Code, Minnesota Revenue Regulations, as applicable.

3.2 Administrative Expenses: Each Holder of an allowed administrative expense claim shall be paid in full, in cash, on the later of: (a) the Effective Date (or as soon as practicable thereafter); or (b) the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, unless the Holder of such Claim agrees to less favorable treatment with respect to such claim. Other than the administrative claims of MDOR, the Debtor believes there are no other unpaid administrative expense claims.

3.3 Professional Fees. The allowed administrative priority claims of the Debtor's lawyers and the Subchapter V Trustee, Mary Sieling (the "Professional Fees") shall be paid on the Effective Date, unless the Holder of such Claim agrees to less favorable treatment with respect to such claim, provided however that the aforementioned professionals may submit a final application for compensation and reimbursement of expenses within 30 days of entry of the confirmation order in this case and the Debtor shall promptly pay any Professional Fees that are allowed as a result of such final applications. On the Effective Date, the Debtor estimates its lawyer's fees to be $5,000, and Trustee Sieling's fees to be $5,000. Following confirmation, the Debtor will continue to pay all court fees and all Subchapter V Trustee fees allowed by the Court in the ordinary course of business, unless otherwise agrees to by the claimant.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS

Class 1: Ally Bank. The Class 1 Claim, with a total claim balance of $19,833.99, will be paid its secured claim of $19,833.99, in full, in cash, starting on the Effective Date, and continuing thereafter on a monthly basis, the contractual payment of $467.17 per month until paid in full. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by Ally Bank to the Debtor shall remain in full force and effect. Any pre-petition default(s) will be cured on the Effective Date. The holder of the Class 1 Claim shall retain its lien secured by the 2022 Dodge Ram Promaster until paid in full.

**Class 1 is not impaired and not entitled to vote to accept or reject the Plan.**

Class 2: TD Bank, N.A.. The Class 2 Claim, with a total claim balance of $57,089.88, will be paid its secured claim of $57,089.88, in full, in cash, starting on the Effective Date, and continuing thereafter on a monthly basis, the contractual payment of $1,006.61 per month until paid in full. Except as modified by this Plan all other terms and conditions of the documents evidencing the loan made by TD Bank, N.A. to the Debtor shall remain in full force and effect. Any pre-petition default(s) will be cured on the Effective Date. The holder of the Class 2 Claim shall retain its lien secured by the 2024 GMC Sierra 1500 until paid in full.

**Class 2 is not impaired and not entitled to vote to accept or reject the Plan.**

Class 3: AmeriCredit Financial Services, Inc. dba GM Financial. The Class 3 Claim, with a total claim balance of $36,756.00, will be paid its secured claim of $36,756.00, in full, in cash, starting on the Effective Date, and continuing thereafter on a monthly basis, the contractual payment of $955.37 per month until paid in full. Except as modified by this Plan all other terms

and conditions of the documents evidencing the loan made by GM Financial to the Debtor shall remain in full force and effect. Any pre-petition default(s) will be cured on the Effective Date. The holder of the Class 3 Claim shall retain its lien secured by the 2024 Chevrolet Silverado 3500 until paid in full.

**Class 3 is not impaired and not entitled to vote to accept or reject the Plan.**

Class 4: Allowed General Unsecured Claims. "General Unsecured Claims" are not secured by property of the estate and not entitled to priority under Section 507 of the Code. As of the date hereof, the Debtor estimates the total pool of allowed General Unsecured Claims to be approximately $459,047.26, including insider claims* and one disputed claim**. In full satisfaction of such claims, each Holder of a Class 4 non-insider claim shall receive its pro-rata share of $76,011.56 in the first year of this Plan, paid quarterly, with the first payment paid three months after the Effective Date by the 15th of that month, and every three months thereafter by the 15th, until a total of $76,011.56 is paid in the first year. In year two of the Plan, unsecured creditors will receive quarterly payments totaling $29,711.56, and in year three of the Plan, unsecured creditors will receive quarterly payments totaling $28,011.56. The total payments to creditors in this Class 4 will be $133,734.68 over the next three years. Payments will be paid quarterly to Class 4.

In case of the claim of Andre Herring Dancy, the Debtor disputes this claim. Mr. Dancy's claim will become "undisputed" in nature once there is a final, non-appealable order, if not sooner by agreement of the Debtor and Mr. Dancy. The Debtor or its principal shall escrow payments for the disputed claim of Andre Herring Dancy into the trust account of the Lamey Law Firm ("Lamey") ("Trust Account"). Such pro-rata payment will be based on Mr. Dancy's filed proof of claim in the amount of $453,247.15. Mr. Dancy or his counsel may request proof of the escrowed funds from Lamey at any time. One the disputed claim reaches a final resolution, the Debtor shall authorize Lamey to disperse Mr. Dancy's amount held in the Trust Account, if his claim is determined to be valid.

The percentage payment to each Class 4 creditor is approximately 29.13% to 100% if the disputed claim is successfully resolved in the Debtor's favor.

***The insider claims, if any, will receive no distribution from the Debtor.***

*****The largest claim in Class 4 is in favor of Andre Herring Dancy, in the disputed amount of $453,247.15. This claim is on appeal and once this appeal is final, this claim will no longer be disputed.***

**Class 4 is impaired and entitled to vote to accept or reject the Plan.**

Class 5: Equity Interests. Equity interest holders are parties who hold an ownership interest in the Debtor. The only members of Class 5 are Troy Detmar and Marshall Hood shall retain their equity interests (50% each) in the Debtor on the Effective Date.

**Class 5 is unimpaired and deemed to accept the Plan.**

## ARTICLE 5: ALLOWANCE OR DISALLOWANCE OF CLAIMS.

5.1 Disputed Claims. A "Disputed Claim" shall mean a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. A Disputed Claim will no longer be disputed once a final order is issued from a court of competent jurisdiction.

5.2 Payments and Distributions with Respect to Disputed Claims: No payments of distributions will be made in respect of a disputed claim until such claim has been allowed by a final, non-appealable order.

5.3 Settlement of Disputed Claims: The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE 6: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 Assumed Executory Contracts and Unexpired Leases. The Debtor will assume all of its contracts listed on Schedule G (*attached hereto* as Exhibit C).

6.2 Rejection of Executory Contracts and Unexpired Leases. Each executory contract or unexpired lease that (i) has not been expressly assumed or rejected with approval by order of the Bankruptcy Court on or prior to the Confirmation Date, and (ii) is not the subject of a motion to reject pending as of the Confirmation Date will, as of the Confirmation Date, and subject to this section, be deemed to have been rejected by the Debtor. A Proof of Claim for any claim arising from the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court no later than 30 days after entry of the order confirming this Plan.

## ARTICLE 7: MEANS OF IMPLEMENTATION

7.1 Vesting and Future Income. On the Effective Date, all of the Debtor's respective rights, title, and interest in and to all assets shall vest in the reorganized Debtor, and in accordance with section 1141 of the Bankruptcy Code.

7.2 Future Management. The Debtor will continue to be managed by Nichole Detmar. Ms. Detmar, along with its owners, Mr. Detmar and Mr. Hood will receive a fixed salaries of $1,350.00 (gross) per week, plus future cost of living increases of 3% per year for all employees.

7.3 Preservation and Settlement of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the reorganized Debtor shall retain all causes of action, including without limitation causes of action that may exist under sections 542, 544 through 550 and 558 of the Bankruptcy Code or under similar state laws (collectively, the "Retained Actions"). The Debtor does not believe there are any viable actions at this time and the Debtor has not relied upon any potential recoveries to produce the cash flow projections attached to this Plan.

7.4 Confirmation Pursuant to Section 1191(a) or 1191(b) of the Bankruptcy Code. The Debtor's petition for relief elected to have subchapter V of Chapter 11 to apply to its case.

The Debtor intends to seek confirmation of this Plan under Section 1191 of the Bankruptcy Code. If all voting classes accept the Plan, the Debtor will seek confirmation pursuant to Section 1191(a). If one or more voting classes do not accept the Plan, the Debtor will seek a "cram down" confirmation of the Plan pursuant to Section 1191(b).

7.5 Distribution of Plan Payments. If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

7.6 Substantial Consummation. If the Plan is confirmed under 11 U.S.C. Section 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 USC Section 1183(c)(2).

7.7 Default. For the avoidance of doubt, nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code.

(a) Notice of Default: Notices of default must be in writing and delivered by first class mail to: Accurate Communication Solutions, Inc., Attn: Nichole Detmar, 1670 South Robert Street, Suite 309, Saint Paul, MN 55118.

(b) Remedy: Unless the Plan expressly provides otherwise, if the Debtor fails to cure within ten (10) business days of such notice from a creditor, the relevant creditor shall be entitled to file an affidavit of default and obtain stay relief with respect to any collateral subject to its liens. All unsecured creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

## ARTICLE 8: GENERAL PROVISIONS

8.1 Definitions. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply unless a term is otherwise defined in this Plan, and as supplemented by the following definitions:

- "Effective Date:" The effective date of this Plan is the first business day following the date that is 14 days after the confirmation order has become a final order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.2 Severability. If any term of this Plan is held by the Bankruptcy Court to be invalid or unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.3 Binding Effect of this Plan. The provisions of this Plan will be binding upon and inure to the benefit of the Debtor, any holder of a claim or equity interest, their respective predecessors, successors, assigns, agents, officers and directors and any other entity affected by this Plan.

8.4 Captions. Article and Section captions used in this Plan are for convenience only and will not affect the construction of this Plan.

8.5 Controlling Effect. Unless a bankruptcy statute or procedure is specified as controlling by federal law, the laws of the State of Minnesota shall govern this Plan and any agreements executed in connection with this Plan.

8.6 Court to Retain Jurisdiction. After the Effective Date, this Court shall retain and have exclusive jurisdiction of all matters arising out of, and related to the Debtor's bankruptcy case or this Plan pursuant to, and for purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code among other things, to: determine any and all disputes relating to administrative expenses, claims and equity interests, including the allowance and amount thereof; enforce or interpret the provisions of the Plan or the order confirming the Plan; determine any and all disputes; consider and allow any and all applications for compensation for professional fees; determine any and all applications, motions, adversary proceedings and contested or litigated matters pending on the Effective Date and arising in or related to the Plan; remedy any defect or omission or reconcile any inconsistency in this Plan; issue such orders, consistent with section 1142 of the Bankruptcy Code, as may be necessary to effectuate the consummation and full and complete implementation of this Plan; hear any other matter not inconsistent with the Bankruptcy Code; and enter a final decree closing the Debtor's bankruptcy case.

**ARTICLE 9: DISCHARGE, INJUNCTIONS, AND SETTLEMENTS OF CLAIMS**

9.1 Discharge Under Consensual Plan. If the Debtor's Plan is confirmed under §1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6). The Debtor will file a plan of substantial consummation within 60 days of plan confirmation if confirmed under §1191(a).

9.2 Discharge Under Non-Consensual Plan. If the Debtor's Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first thirty-six (36) months of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after thirty-six (36) months of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully Submitted,
Dated: April 3, 2026

/e/ John D. Lamey III
John D. Lamey III, Esq., Atty ID:0312009
980 Inwood Ave N
Oakdale, MN 55128
651-209-3550
Fax 651-789-2179
***Attorney for the Debtor***

Dated: April 3, 2026

/e/ Nichole Detmar
Nichole Detmar, Executive Director